2005 ND 72

**Lisa Barnhart PAULSON, Plaintiff and Appellant,**

v.

**Benjamin B. PAULSON, Defendant and Appellee.**

**No. 20040242.**

Supreme Court of North Dakota.

April 6, 2005.

Valeska A. Hermanson, McKennett Stenehjem Reierson Forsberg & Hermanson, P.C., Williston, N.D., for plaintiff and appellant.

Ronald A. Reichert, Reichert & Herauf, P.C., Dickinson, N.D., for defendant and appellee.

Sandra Kay Kuntz, Guardian ad Litem, Mackoff, Kellogg, Kirby & Kloster, Dickinson, N.D.

VANDE WALLE, Chief Justice.

[¶ 1] Lisa Barnhart Paulson ("Barnhart") appealed from a judgment granting her and Benjamin B. Paulson a divorce and awarding custody of their son to Benjamin Paulson with restricted supervised visitation for Barnhart. We affirm the custody award to Paulson but reverse and remand for a redetermination of Barnhart's visitation privileges.

I

[¶ 2] Barnhart and Paulson were married on July 26, 2001. They had two children of their marriage; a son, who was two years old at the time of the divorce proceedings, and a daughter, who was only two months old when she and Barnhart were involved in a car accident in January 2003, which resulted in the child's death and severe injuries to Barnhart. The parties separated in September 2003 and Barnhart filed for divorce. Upon allegations of possible sexual abuse by Paulson against the son and because of inconclusive medical examinations to verify or refute the allegations, the boy was placed in foster care on March 15, 2004. Proceedings were subsequently held in juvenile court to resolve allegations the boy was a deprived child. The juvenile court entered an order on July 2, 2004 placing the boy in Paulson's custody with limited supervised visitation for Barnhart.

[¶ 3] After a hearing on the divorce complaint, the court dissolved the parties' marriage on the ground of irreconcilable differences and awarded custody of their son to Paulson with supervised visitation for Barnhart "as determined by Dr. Angela Cavett." The court also divided the parties' marital property and ordered Barnhart to pay child support of $168 per month. Barnhart's appeal concerns that part of the judgment awarding custody to Paulson and granting her restricted visitation privileges.

II

[¶ 4] Barnhart asserts the trial court denied her a fair trial because the court appointed Sandra Kuntz to act in the capacity of both custody investigator and guardian ad litem for the son. Barnhart asserts that as custody investigator Kuntz acted as the child's advocate in violation of Rule 8.6, N.D.R.Ct., and Kuntz testified at the hearing in violation of the permissible responsibilities of a guardian ad litem under Rule 8.7, N.D.R.Ct.

[¶ 5] Relevant to this issue, Rule 8.6, N.D.R.Ct., provides:

(c) Court Proceedings. A custody investigator shall attend all court proceedings and shall testify when requested. A custody investigator may not call a witness, question a witness, file a motion, or act as a legal advocate.

Rule 8.7, N.D.R.Ct., provides, in relevant part:

> (d) Responsibilities of Guardian ad Litem.
>
> (1) A guardian ad litem shall advocate the best interests of the child as to legal custody, physical placement, visitation, and support. A guardian ad litem shall function independently, in the same manner as an attorney for a party to the action, and, consistent with the Rules of Professional Conduct, shall consider, but not be bound by, the wishes of the child or others as to the best interests of the child.
>
> . . .
>
> (e) Court Proceedings. A guardian ad litem may present a case, cross-examine a witness, deliver a summation, prepare a memorandum of law, file a motion, and file or participate in an appeal on issues involving the best interests of the child.

Barnhart also relies on the explanatory note to Rule 8.7, N.D.R.Ct., which provides, in relevant part:

> The role of a guardian ad litem is to act as an attorney. A guardian ad litem is not to act as a custody investigator by preparing a custody investigation report or giving testimony.

Rule 8.6(c), N.D.R.Ct., provides that a custody investigator may not call or question a witness or act as a legal advocate. The note to Rule 8.7, N.D.R.Ct., explains that a guardian ad litem is not to act as a custody investigator or give testimony. When, however, a guardian ad litem files a report and recommendation the parties have a right to call the guardian ad litem as a witness and to cross-examine the guardian ad litem with leading questions. *See Goff v. Goff*, 2000 ND 57, ¶ 10, 607 N.W.2d 573. It is within the trial court's discretion to assign the weight to be given to a guardian ad litem's testimony and recommendation.

*Hogan v. Hogan*, 2003 ND 105, ¶¶ 10–11, 665 N.W.2d 672.

[¶ 6] In this case, the court initially appointed Kuntz as custody investigator. Later, upon stipulation of the parties, the court amended its order and appointed Kuntz to act as both custody investigator and guardian ad litem for the child. Barnhart made no objection to Kuntz acting in this capacity until after Kuntz had submitted her final report, which in effect was an investigative report, wherein she recommended that custody be awarded to Paulson. A person may waive all rights and privileges to which that person is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the constitution. *Toni v. Toni*, 2001 ND 193, ¶ 10, 636 N.W.2d 396. A waiver occurs when a person voluntarily and intentionally relinquishes a known right or privilege. *Pfeifle v. Tanabe*, 2000 ND 219, ¶ 18, 620 N.W.2d 167. Waiver may be established either by an express agreement or by inference from acts or conduct. *Id.* The existence of waiver is generally a question of fact, but if circumstances of an alleged waiver are admitted or clearly established and reasonable persons can draw only one conclusion from those circumstances, the existence of waiver is a question of law. *Id.*

[¶ 7] It is undisputed the parties agreed to have the court appoint one person to act as both custody investigator and guardian ad litem for the child in this case. Under these circumstances, we conclude, as a matter of law, Barnhart waived her right to object that Kuntz was acting in violation of Rule 8.6, N.D.R.Ct., when she proceeded as the child's advocate or that she violated Rule 8.7, N.D.R.Ct., when she testified at the hearing.

### III

[¶ 8] Barnhart asserts the trial court made two findings of fact regarding the issue of custody which are clearly erroneous. The court's custody determination is a finding of fact which will not be reversed unless it is clearly erroneous. *Krank v. Krank*, 2003 ND 146, ¶ 6, 669 N.W.2d 105. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. *Id.*

### A

[¶ 9] The trial court found:

Allegations of sexual abuse were investigated by the Bureau of Criminal Investigation, including numerous interviews with Benjamin Paulson, a forensic examination of [the child], and polygraph examinations of Lisa Barnhart Paulson and Benjamin Paulson, and the conclusion of the investigation was that no abuse of [the child] by Benjamin Paulson was evidenced.

Barnhart asserts the conclusions of the Bureau of Criminal Investigation were never introduced into evidence and, therefore, this finding is not supported by evidence and is clearly erroneous. The guardian ad litem's report was introduced into evidence, and within that report the guardian ad litem states:

The law enforcement and social services investigations of [the child's] statements reveal no substantial evidence to support any abuse of or danger to [the child] by his father.

While the Bureau of Criminal Investigation's report and conclusions apparently were not introduced into evidence, this statement by the guardian in her report provides a basis upon which the trial court could find that the criminal investigation resulted in no finding that abuse had been committed upon the child by the father. We conclude, therefore, the court's finding is not clearly erroneous.

### B

[¶ 10] The trial court also made the following specific finding:

Further allegations of sexual abuse were analyzed by Alonna K. Norberg, M.D., of the MeritCare Coordinated Treatment Center in Fargo, North Dakota, and she did not conclude that the child had been a victim of sexual assault.

Barnhart asserts the parties stipulated to a resolution in the juvenile court case, and consequently the evaluation of Norberg was never introduced into evidence in that case or this one. She asserts the trial court's finding, therefore, is not supported by the evidence.

[¶ 11] Relevant to this issue, Paulson testified:

A. . . . . [A]fter the incident where he made statements at Family Connection and to Dr. Cavett—I immediately took him to the hospital here in town to be examined because if he's saying I put— what is it—was a train in his butt, or a broomstick, or whatever, or some large object, there would definitely be some physical evidence of that, so I took him in right away knowing that there's no physical evidence of this stuff.

Q. And was that the report that there was no physical evidence?

A. Yeah, and then I took him back, I believe, the next day—or the following day in compliance with Social Services and they—they actually went with us and, once again, there was nothing, and then we went to Fargo shortly after that for a—to a very specialized professional that deals with children's bottoms and,

once again, there was nothing, and I cooperated very willingly with all of this as I have through the whole thing.

While Norberg's name was not specifically mentioned in this line of testimony, Paulson made reference to her as "a very specialized professional" in Fargo and testified "there was nothing" from the result of her examination to conclude he had sexually abused the child. This evidence supports the court's finding, and we conclude the finding is not clearly erroneous.

[¶ 12] Furthermore, we view these two questioned findings in the context of all of the court's extensive findings, relevant to the issue of custody:

> [T]he Plaintiff, Lisa Barnhart Paulson, has perpetrated numerous allegations of sexual abuse of the minor child ... by the Defendant, Benjamin B. Paulson.... [T]he alleged abuse reports have been investigated by Social Services and found to be unwarranted.

> [A] forensic interview of the child ... was conducted by Paula Condol, M.S., L.P.C.C., of the Children's Advocacy Center in Bismarck, North Dakota, who concluded that [the child] did not disclose any sexual abuse.

> [A] physical examination of the child ... was performed by Dr. Perkerewicz, who found no physical evidence of sexual abuse of [the child]....

> Dr. Kathy Blohm, a licensed psychologist, of Bismarck, North Dakota, after an interview with [the child] and Lisa Barnhart Paulson, had suspicions of false allegations of Lisa.

> [A]fter a visit with [the child] by Benjamin Paulson, Lisa Barnhart Paulson and her mother took [the child] to St. Joseph's Hospital and Health Center in Dickinson, alleging physical abuse by Benjamin Paulson to [the child] and upon examination and testing by doctors at St. Joseph's Hospital and Health Center, no abuse was found....

> The Juvenile Court for Bowman County has investigated the allegations and the issue of custody of the minor child ... and has ordered that the Defendant, Benjamin Paulson, have custody of [the child] and that Lisa's visitation be controlled by Dr. Angela Cavett, a therapeutic psychologist.

> [A]ll parties agreed in the Bowman County juvenile case that Benjamin Paulson should have custody of [the child] and Lisa Barnhart Paulson would have supervised visitation....

> The Court has taken judicial notice of Bowman County Juvenile Case No. 06–04R–04, and specifically incorporates herein by reference and adopts as a part of the Court's findings, the parties' stipulation, the findings of fact, order of disposition, and the attached report of Julie Alexander, guardian ad litem....

> Dr. Cavett, the child's psychologist, testified that parents attempting to determine whether a child has been sexually abused sometimes resort to behaviors that are inappropriate. Such behaviors include:

> ● Photographing the child upon his return from visits

> ● Repeatedly inspecting the child's genitals after visits with the other parent

> ● Recording the child's statements on audiotape or videotape

> ● Bringing the child to a physician for repeated sexual abuse examinations

> ● Barraging the child with questions after visits

> Dr. Cavett testified that such behaviors can be considered abusive and can have as great an impact on the child as actual sexual abuse. Such behaviors can

create an atmosphere of anxiety, danger, lack of safety and alienation. The guardian ad litem report of Sandra K. Kuntz documents similar behaviors engaged by Lisa Barnhart Paulson.

[¶ 13] The trial court found Barnhart had made numerous allegations that Paulson sexually abused their son, none of which were substantiated. The court also found Paulson had not committed any acts of abuse upon his son. Barnhart has neither objected to nor alleged those findings by the trial court are not supported by the record evidence.

[¶ 14] In determining custody, Section 14–09–06.2(1), N.D.C.C., lists the relevant factors to be considered by the court:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. . . .

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. . . .

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

Upon examining the evidence and considering all of the relevant factors under N.D.C.C. § 14–09–06.2, the court concluded:

The factors, c, e, h, i, j, k appear to favor neither parent. While both parents have a tremendous love and affection for the child ... the mental health problems concerning the mother, Lisa Paulson, raise serious concerns about her ability to have and develop a healthy emotional tie with [the boy]. Coupled with the pattern of untruthfulness that surrounds Lisa's reports and conduct throughout these proceedings, it appears that the best interests of factors a, b, f, j, l favor the father, Beni Paulson. The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity has yet to be established for [the child]. This is a resourceful 2½ year old boy who, for over the past year, has survived

a traumatic accident, as well as endured the loss of a sibling, parental and family discord, divorce, and placement in foster care. [The child] needs to be placed in an environment that will allow him the necessity of finding that stability, safety and peace that will heal his losses and nurture his development.

It is therefore recommended that the legal and physical care, custody and control of [the child] be placed with his natural father, Benjamin Paulson.

We conclude the court's findings are supported by the evidence and are not clearly erroneous. We further conclude the evidence supports the court's award of custody to Paulson and that decision is not clearly erroneous.

## IV.

[¶ 15] Barnhart asserts the trial court denied her a fair trial because the court denied her motion for continuance when she discovered two days before the trial that the court-appointed psychologist, Chris Hertler, who was appointed to conduct independent evaluations of the parties, had begun treating Paulson and was also the supervisor of the boy's psychologist.

[¶ 16] A continuance is the proper remedy for a party claiming unfair surprise. *Reimche v. Reimche,* 1997 ND 138, ¶ 9, 566 N.W.2d 790. This Court will not reverse a trial court's decision to deny a continuance absent an abuse of discretion by the trial court. *State v. Hilgers,* 2004 ND 160, ¶ 38, 685 N.W.2d 109; *Riemers v. Peters–Riemers,* 2004 ND 153, ¶ 32, 684 N.W.2d 619. The court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Alerus Financial, N.A. v. Lamb,* 2003 ND 158, ¶ 6, 670 N.W.2d 351.

[¶ 17] A claim of bias by a licensed psychologist who is testifying in a

case is a matter that goes to the weight to be accorded the psychologist's opinion, and not its admissibility. *Loll v. Loll,* 1997 ND 51, ¶ 22, 561 N.W.2d 625. Hertler testified that he completed his report of the parties' evaluations prior to beginning treatment for Paulson. Paulson's attorney was given full opportunity to cross-examine Hertler. In addition, all motions in the case were to be filed in time to be heard at a scheduled pre-trial conference and Barnhart's counsel failed, without excuse, to attend that pre-trial conference. The trial court partially based its denial of the request for continuance on that failure. Under these circumstances, we conclude the trial court did not abuse its discretion in denying Barnhart's request for a continuance.

## V

[¶ 18] Barnhart asserts the trial court improperly delegated to psychologist Angela Cavett the court's authority to schedule visitation. Upon awarding Paulson custody of the parties' son, the court awarded visitation to Barnhart as follows:

[T]he Plaintiff, Lisa Barnhart Paulson, shall have visitation as determined by Dr. Angela Cavett, as is more fully delineated in the action filed in Bowman County Juvenile Court, *In the Interest of C.P., a child,* Case No. 2004R–04, and this visitation procedure shall continue in the event the juvenile case is terminated.... [T]he Plaintiff shall be responsible for any costs associated with visitation.

The July 2, 2004, juvenile court order, referenced by the trial court in this case, provided:

Lisa Barnhart Paulson shall receive supervised visitation with [her son] through the Family Connections in Dickinson, North Dakota. At Dr. Cavett's recommendation to the Custodian,

Lisa Barnhart Paulson shall have supervised visitation with [her son] through a licensed social worker approved by Dr. Cavett and all other parties. Dr. Cavett shall continue to make recommendations for visitations to the Custodian based upon [the boy's] therapeutic progression.

[¶ 19] After a custody decision has been made, visitation is governed by N.D.C.C. § 14–05–22(2), which provides, in relevant part:

> After making an award of custody, the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health.

Visitation is a right of the child and is presumed to be in the child's best interest. *Oldham v. Oldham*, 2004 ND 62, ¶ 13, 677 N.W.2d 196. The trial court's decision on visitation is a finding of fact and will not be reversed unless it is clearly erroneous. *Id.* Under the statute, the court must grant such rights of visitation as will enable the child and noncustodial parent to maintain a parent-child relationship that is beneficial to the child, unless the court finds that visitation is likely to "endanger the child's physical or emotional health." Dr. Angela Cavett, the child's treating psychologist, testified the visitation plan she envisions is that the boy will see his mother when they have therapy together, and his mother will also have supervised visits when Dr. Cavett recommends it. Dr. Cavett testified the child is not in physical danger in Barnhart's care, but she believes all visits should be supervised because with unsupervised visits the child may be "bombarded with ... more possible allegations of child abuse."

[¶ 20] This case is distinguishable from the circumstances in the recently decided case of *Wigginton v. Wigginton*, 2005 ND 31, ¶ 7, 692 N.W.2d 108, wherein the mother was awarded custody of the parties' two minor children with visitation for the father "to be conducted at the sole discretion of" the mother. The trial court found that the children's father continued to use methamphetamine within a few days of the trial and his use of contraband drugs "harmed his relationship with his children and did place his children in danger." The trial court stated that giving the custodial parent control of visitation was unusual and not done lightly, but under the circumstances it was necessary to keep the children from harm. The trial court was convinced the custodial parent wanted the children to maintain a relationship with their father and would do everything possible to encourage reasonable visitations if and when those visitations would be safe for the children. This Court upheld the restricted visitations under these "highly unusual" circumstances, stating:

> Giving the custodial parent such complete discretionary authority over the manner and timing of visitation should be used only when there is a demonstrated need to protect the children from the potential for physical or emotional harm *and* where, as here, the custodial parent has demonstrated that he or she is "deeply concerned that the children, for the children's benefit, maintain a relationship with" the noncustodial parent.

*Id.* at ¶ 12 (emphasis in original).

[¶ 21] Generally, the trial court cannot delegate to anyone the power to decide questions of child custody or related issues. *See Owan v. Owan*, 541 N.W.2d 719, 722 (N.D.1996). Visitation should be restricted only upon a showing by a preponderance of the evidence that

unrestricted visitation is likely to endanger the child's physical or emotional health. *Wigginton*, 2005 ND 31, ¶ 11, 692 N.W.2d 108. Unlike the circumstances in *Wigginton*, there was no finding in this case that visitations between Barnhart and her son would necessarily endanger the child's physical or emotional health. Consequently, we conclude the trial court impermissibly delegated its authority, under the circumstances, by allowing Dr. Cavett to set the visitation schedule, carte blanche. We, therefore, reverse the court's visitation order and remand for a redetermination of appropriate visitation, which the court must schedule and retain authority to modify.

### VI

[¶ 22] We hold the trial court did not deny Barnhart a fair trial in this case, the court's findings relevant to the issue of custody are supported by the evidence and are not clearly erroneous, and the court did not abuse its discretion in denying Barnhart's request for a continuance prior to the start of the trial. We further conclude, however, the court impermissibly delegated its authority to decide visitation. We, therefore, affirm the court's award of custody but reverse the court's visitation decision and remand for a redetermination of reasonable visitation for Barnhart.

[¶ 23] DALE V. SANDSTROM, CAROL RONNING KAPSNER and MARY MUEHLEN MARING, JJ., concur.

[¶ 24] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.