Filed 8/20/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 160

Matter of J.D.F., a minor child

D.D.F. and C.A.F., Petitioners and Appellants

v.

North Dakota Department of Human Services, Respondent

and

G.V.D., Respondent and Appellee

No. 20100051

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Gail H. Hagerty, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Jaclyn Marie Stebbins (argued), and David R. Bliss (appeared), P.O. Box 4126, Bismarck, N.D. 58502, for petitioners and appellants.

Bradley D. Peterson, P.O. Box 2419, Bismarck, N.D. 58502-2419, for respondent and appellee G.V.D.

Patricia E. Garrity, P.O. Box 100, Mandan, N.D. 58554-0100, guardian ad litem.

Matter of J.D.F.

No. 20100051

VandeWalle, Chief Justice.

[¶1] D.D.F. (“Doug”)
(footnote: 1) and C.A.F. (“Cathy”) appealed from a district court order denying their motion to terminate G.V.D.’s (“Greg”) parental rights to the child he has with Cathy.  On appeal, Doug and Cathy argue the district court erred in denying their petition to terminate Greg’s parental rights and in ordering them to pay one-half of the guardian ad litem expenses.  Greg argues the appeal is not timely and should be dismissed.  We affirm.

I

[¶2] Cathy and Greg have one minor child, born in 1997, together.  Cathy and Greg divorced in December 2004, and Cathy was awarded primary residential responsibility of the child.  Greg was not regularly employed at the time of the divorce, but he had applied for social security disability benefits.  The parties agreed Greg would not pay child support, but he was required to apply for children’s benefits to be paid to Cathy if he became eligible for social security disability benefits.  The parties’ agreement was incorporated in the divorce judgment.

[¶3] After the divorce, Cathy and the child lived in Bismarck and Greg lived near Minneapolis, Minnesota.  Greg saw the child regularly until June 2005.  After a June 2005 visit, Greg did not see the child again until March 2009.  In August 2005, Cathy obtained a disorderly conduct restraining order, prohibiting Greg from contacting her for one year.  The restraining order stated Greg could call Cathy’s attorney for visitation concerns.

[¶4] The child began therapy with Karen Mueller in March 2005.  Mueller attempted to re-establish contact between Greg and the child.  Greg and the child exchanged letters through Mueller in February 2006, but Cathy stopped bringing the child to Mueller for therapy after the letters were exchanged.

[¶5] Cathy married Doug in June 2006.  On December 4, 2007, Doug and Cathy filed a petition to terminate Greg’s parental rights and a petition for a step-parent adoption.  After a hearing, the district court found Greg abandoned the child, granted the petition for termination of Greg’s parental rights, and granted the petition for adoption in an April 2008 order.  Greg appealed, and in 
In re Adoption of J.D.F.
, 2009 ND 21, 761 N.W.2d 582, this Court reversed the district court’s decision and remanded for a new trial, holding Greg was entitled to be informed of his right to counsel; Greg did not knowingly, voluntarily, and intelligently waive his right to counsel; and the denial of counsel was not harmless error.

[¶6] On remand, the court appointed counsel to represent Greg and appointed Patricia Garrity as a guardian ad litem “to investigate the best interests of the child and obtain information from whatever sources she deems necessary so that she may do so.”  The court also ordered the guardian ad litem file a report fifteen days prior to the hearing.  The court ordered the parties to each pay half of Garrity’s expenses, with Burleigh County paying Greg’s half of the expenses subject to reimbursement if the County established Greg had the ability to pay the fees.  Prior to trial, Garrity submitted her report and recommendation.

[¶7] In December 2009, an evidentiary hearing was held.  Both sides presented evidence, including testimony from Cathy, Doug, Greg, and Mueller.  Garrity cross-

examined witnesses, called her own witnesses, and delivered a closing argument.  Doug and Cathy called Garrity to testify about her report, but Garrity objected, arguing she was appointed as a guardian ad litem and as an attorney she cannot testify.  Doug and Cathy argued Garrity was required to submit to cross-examination.  The court informed Garrity that she must either submit to cross-examination or withdraw her report.  Garrity chose to withdraw her report.

[¶8] The court entered an order on December 22, 2009, denying Doug and Cathy’s petition to terminate Greg’s parental rights and dismissing the petition for adoption.  The court found there was not clear and convincing evidence Greg abandoned the child.

[¶9] On December 31, 2009, the court approved the guardian ad litem expenses Garrity submitted and ordered the parties to each pay one-half of the $5,473.50 total expenses.  Doug and Cathy objected to the order, arguing they should not have to pay the expenses and Garrity did not have standing to request payment of her expenses because she refused to submit to cross-examination, she withdrew her report, and she did not fulfill her duties as a guardian ad litem.  The court indicated it would not take any further action on the matter.

II

[¶10] Doug and Cathy filed a notice of appeal on February 12, 2010.  Greg moved to dismiss the appeal, arguing the appeal was not timely under N.D.R.App.P. 2.2.  Rule 2.2, N.D.R.App.P., sets out the procedure for expedited appeals from orders terminating parental rights, and states, “Filing Notice of Expedited Appeal.  An appeal from an order terminating parental rights must be taken by filing a notice of expedited appeal with the clerk of district court within 30 days after entry of the order.”  Greg contends N.D.R.App.P. 2.2 applies to all appeals involving termination of parental rights, including an appeal from an order denying a petition to terminate parental rights.

[¶11] When we interpret a court rule, we apply principles of statutory construction to ascertain intent.  
Olsrud v. Bismarck-Mandan Orchestral Ass’n
, 2007 ND 91, ¶ 12, 733 N.W.2d 256.  We look at the language of the rule first and give words their plain, ordinary, and commonly understood meaning to determine intent.  
Id.

[¶12] The plain language of N.D.R.App.P. 2.2 provides that for an appeal from an order terminating parental rights a notice of appeal must be filed within thirty days after entry of the order.  Giving the words their plain, ordinary, and commonly understood meaning, we conclude the rule applies only to appeals from orders terminating parental rights and does not apply to appeals from orders denying a petition to terminate parental rights.  Here, Doug and Cathy appealed from an order denying their petition to terminate parental rights, and therefore N.D.R.App.P. 2.2 does not apply.

[¶13] Under N.D.R.App.P. 4(a), a notice of appeal in a civil case must be filed within sixty days from service of notice of entry of the judgment or order being appealed.  Doug and Cathy filed the notice of appeal within sixty days of the order denying their petition to terminate Greg’s parental rights.  We conclude their appeal was timely.

[¶14] Greg also argues N.D.R.App.P. 2.2 must apply equally to all parties in a termination proceeding or it would violate equal protection and due process under the United States and North Dakota Constitutions.  “A court may decide the merits of a dispute only if the parties demonstrate they have standing to litigate the issues.”  
Whitecalfe v. North Dakota Dep’t of Transp.
, 2007 ND 32, ¶ 15, 727 N.W.2d 779.  In determining whether a party has standing to litigate an issue, we consider two prongs:

First, the [party raising the issue] must have suffered some threatened or actual injury resulting from the putatively illegal action.  Secondly, the asserted harm must not be a generalized grievance shared by all or a large class of citizens; the [party raising the issue] generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third parties.

Id.
 at ¶ 16 (quoting 
Flatt v. Kantak
, 2004 ND 173, ¶ 38, 687 N.W.2d 208).

[¶15] Greg did not appeal from an order granting or denying a petition to terminate parental rights, and he has not suffered a threatened or actual injury from the alleged illegal action.  We conclude Greg does not have standing to raise an equal protection or due process challenge to N.D.R.App.P. 2.2.

III

[¶16] Doug and Cathy argue the district court erred in denying their request to terminate Greg’s parental rights and dismissing their petition for adoption.  They contend there is clear and convincing evidence Greg abandoned the child.

[¶17] Generally, parental consent is a prerequisite to adoption, but consent is not required of:

a. A parent who has deserted a child without affording means of identification or who has abandoned a child.

b. A parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause:

(1) To communicate with the child; or

(2) to provide for the care and support of the child as required by law or judicial decree.

. . . .

e. A parent whose parental rights have been terminated by order of court under section 14-15-19.

N.D.C.C. § 14-15-06(1).  The parental rights of a parent may be terminated by a court order in connection with an adoption action if the minor has been abandoned by the parent.  N.D.C.C. § 14-15-19(3)(a).  “Abandon” as used in N.D.C.C. ch. 14-

15 means:

a. As to a parent of a child not in the custody of that parent, failure by the noncustodial parent significantly without justifiable cause to:

(1) Communicate with the child; or

(2) Provide for the care and support of the child as required by law.

N.D.C.C. § 14-15-01(1).  This Court has said a district court should consider the following factors in deciding whether a child has been abandoned:

[W]e look to such factors as the parent’s contact and communication with the child, the parent’s love, care and affection toward the child, and the parent’s intent.  Also relevant is the parent’s acceptance of parental obligations such as providing care, protection, support, education, moral guidance, and a home for the child.  A casual display of interest by a parent does not preclude a finding of abandonment, and a parent’s negligent failure to perform parental duties is significant to the issue.

In re Adoption of H.R.W.
, 2004 ND 216, ¶ 6, 689 N.W.2d 403 (citations omitted).

[¶18] A party seeking termination of parental rights in the context of an adoption proceeding must prove the elements required to support termination by clear and convincing evidence.  
In re Adoption of H.G.C.
, 2009 ND 19, ¶ 10, 761 N.W.2d 565. Clear and convincing evidence is “evidence that leads to a firm belief or conviction the allegations are true.”  
Id.
  Whether a child has been abandoned is a question of fact, and the district court’s findings of fact will not be reversed on appeal unless they are clearly erroneous.  
Id.
  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if there is some supporting evidence, we are left with a definite and firm conviction a mistake has been made.  
Id.

[¶19] The district court found Doug and Cathy did not prove the required elements to support termination:

I cannot find by clear and convincing evidence that [Greg] abandoned his child.  He clearly loves the child.  He made attempts to have contact with the child.  His contacts were frustrated by the fact the phone wasn’t answered as a matter of routine at the only residence connected with the child about which he had knowledge.  His contacts were frustrated by the fact that he did not have [Cathy’s] cell phone number and was restricted from contact because of a protection order.  (He admits his behavior which resulted in entry of the protection order was inappropriate.)  His contacts were frustrated because he simply did not have funds to pursue visitation through the court system.

Perhaps most telling is the fact that when Karen Mueller arranged for exchange of letters between the child and [Greg], both wrote letters and the child was pleased to receive a letter on February 23, 2006.  When Mueller suggested a telephone conference in which the child, [Greg] and Mueller would be involved, [Cathy] resisted.  She did not bring the child to Mueller for further sessions.

While [Greg] has not provided support for the child, [Cathy] waived the obligation of child support in the divorce action, and has never sought support.  It may be available at this time, since [Greg] has been awarded benefits. [Cathy] and [Greg] will need to work together to ensure that the child receives support through the benefits or though establishment of a child support obligation.

[¶20] The evidence supports the court’s findings.  Greg testified that he tried calling and leaving messages at Cathy’s parents’ house after the June 2005 visitation, but his calls were not returned.  He testified that he called Cathy’s parents’ house because Cathy’s phone number was unlisted and that he did not have information to contact her directly.  Cathy’s mother testified that Cathy and the child lived with her and Cathy’s father from October 2005 until June 2006.  She testified they did not answer the phone and would let the answering machine pick up the phone calls.

[¶21] Mueller testified that she helped the child and Greg have contact through letters while the child was seeing her for therapy.  She testified the child was very happy to receive Greg’s letter in February 2006 and she suggested a supervised telephone call but Cathy was resistant and did not schedule another therapy session.  Mueller testified that she spoke to Greg and he was cooperative with her supervising any written and telephone communication with the child.  She also testified that Greg contacted her office in June 2006, looking for the child but she was no longer seeing the child for therapy.  Mueller testified Cathy told her Greg had called and his phone number was on her caller ID, but she would not tell the child about the calls and she had not given Greg her address.  Although Doug and Cathy argue there was other conflicting evidence presented on this issue, we give due regard to the district court’s opportunity to assess the witnesses’ credibility.  
See
 N.D.R.Civ.P. 52(a).

[¶22] There was evidence the parties agreed at the time of divorce that Greg would not pay child support.  The divorce judgment states:

The parties hereby agree that neither party shall pay child support to the other at this time.  The defendant is in the process of applying for Social Security Disability benefits.  If it is determined that the defendant is entitled to Social Security Disability benefits, he shall apply for children’s benefits to be paid to the plaintiff in lieu of child support.  If it is determined that he is not entitled to Social Security Disability benefits, then a child support obligation may be established according to the North Dakota Child Support Guidelines.

Greg applied for social security disability benefits in November 2005 and received notice that he was approved to receive benefits in April 2009.  Greg testified that he was advised Cathy would have to contact the Social Security Administration to receive benefits on the child’s behalf.  Cathy has not pursued establishing a child support obligation.  The evidence supports the court’s findings.

[¶23] Doug and Cathy also argue the court erred in not considering evidence that Greg was physically and verbally abusive to Cathy.  However, Doug and Cathy petitioned for termination based on a claim of abandonment.  Evidence Greg physically or verbally abused Cathy was not relevant to determining whether Greg abandoned the child under the definition of abandonment in N.D.C.C. ch. 14-15.

[¶24] The evidence supports the court’s finding that Doug and Cathy failed to prove Greg failed to significantly communicate with the child or provide for the care and support for the child for at least one year without justifiable cause.  Based on the entire record, we are not left with a definite and firm conviction a mistake has been made.  We conclude the court’s findings are not clearly erroneous, and we affirm the district court’s decision to deny Doug and Cathy’s petition to terminate Greg’s parental rights.

IV

[¶25] Doug and Cathy argue the court erred in ordering them to pay half of the guardian ad litem expenses.  They contend they should not have to pay Garrity’s expenses because she was no longer a party after she withdrew her report and, therefore, did not have standing in front of the court to request her expenses.

[¶26] When a court appoints a guardian ad litem in proceedings involving parental rights, the court may direct either or both parties to pay the guardian ad litem’s expenses.  N.D.C.C. § 14-09-06.4.  The decision whether to appoint a guardian ad litem and the allocation of a guardian ad litem’s expenses is within the court’s discretion and will not be reversed on appeal absent an abuse of discretion.  
Hanson v. Hanson
, 2005 ND 82, ¶ 17, 695 N.W.2d 205 (appointment of a guardian ad litem); 
In re C.J.C.
, 2000 ND 27, ¶ 8, 606 N.W.2d 117 (allocation of fees).  A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination.  
In re C.J.C.
, at ¶ 8.

[¶27] Rule 8.7, N.D.R.Ct., provides the duties and responsibilities of a guardian ad litem, and states:

(d) Responsibilities of Guardian ad Litem.

(1) A guardian ad litem shall advocate the best interests of the child as to, parenting rights and responsibilities and support.  A guardian ad litem shall function independently, in the same manner as an attorney for a party to the action, and, consistent with the Rules of Professional Conduct, shall consider, but not be bound by, the wishes of the child or others as to the best interests of the child.

(2) After appointment, a guardian ad litem shall:

(A) work with a parenting investigator, if appointed, to coordinate investigation activities and avoid duplicating services;

(B) interview and observe the child to ascertain the facts relevant to parental rights and responsibilities, the child’s wishes, the need for independent evaluation, and the need for an appropriateness of interim judicial relief;

(C) advise the child and the child’s parents of the role and responsibilities of the guardian ad litem;

(D) interview potential witnesses, lay and expert, with relevant knowledge of the child or parties; and

(E) participate in meetings impacting the life of the child, including permanency planning meetings and other activities as may be directed by the court.

. . . . 

(e) Court Proceedings.  A guardian ad litem may present a case, cross-examine a witness, deliver a summation, prepare a memorandum of law, file a motion, and file or participate in an appeal on issues involving the best interests of the child.

The explanatory note for N.D.R.Ct. 8.7 further explains the role of a guardian ad litem and states, “The role of a guardian ad litem is to act as an attorney.  A guardian ad litem is not to act as a parenting investigator by preparing a parenting investigation report or giving testimony.”

[¶28] Here, the district court appointed Garrity as a guardian ad litem.  The court ordered that Garrity have complete access to records concerning Cathy, Doug, Greg, and the child; that she have the authority to investigate the best interests of the child; and that she have the authority to obtain information from whatever sources she deems necessary.  The court also ordered Garrity to file a report fifteen days prior to the hearing.  The court ordered Doug and Cathy pay half of Garrity’s expenses and the County pay the other half on Greg’s behalf, subject to reimbursement if the County established Greg has the ability to reimburse the County.

[¶29] Citing 
Paulson v. Paulson
, 2005 ND 72, 694 N.W.2d 681, Doug and Cathy argue Garrity was required to be subject to cross-examination and she did not have standing after she withdrew her report.  In 
Paulson
, at ¶ 5, we said “[w]hen . . . a guardian ad litem files a report and recommendation the parties have a right to call the guardian ad litem as a witness and to cross-examine the guardian ad litem with leading questions.”  This case, however, is different from 
Paulson
.  In 
Paulson
, at ¶¶ 6-7, the guardian ad litem was also appointed as a parenting investigator under N.D.R.Ct. 8.6 and submitted an investigative report.  Garrity was not appointed as a parenting investigator, but was appointed as a guardian ad litem.  Before the order appointing Garrity as a guardian ad litem was signed, the parties and the court exchanged emails discussing what Garrity’s role would be.  The court informed the parties that it assumed Garrity would take an active role as an attorney at the hearing and Garrity stated that was what she intended.  Doug and Cathy did not object to Garrity questioning witnesses or presenting evidence during the hearing, and they do not argue she was appointed as a parenting investigator.

[¶30] The purpose of having different rules for parenting investigators and guardians ad litem is to separate the two roles.  
See
 
Minutes of the Joint Procedure Comm.
 8 (Sept. 24-25, 1998) (intent of the proposed rules is to distinguish between a guardian ad litem and a custody investigator by defining the qualifications, ethical considerations, and responsibilities of each).  Guardians ad litem and parenting investigators have different roles and duties, and the rules define these duties.  Rule 8.7, N.D.R.Ct., specifically provides a guardian ad litem’s responsibilities, including interviewing potential witnesses, cross-examining witnesses, delivering a summation, and preparing memorandums of law.  Garrity fulfilled those responsibilities.

[¶31] A guardian ad litem is not a parenting investigator and is not required to write a report.  
See
 N.D.R.Ct. 8.7, explanatory note.  To the extent the report the court ordered Garrity to file can be considered a parenting investigation, it should not have been ordered.  The court corrected any error in ordering the report by offering Garrity the choice of testifying or withdrawing the report.  Garrity withdrew her report and was not required to testify.

[¶32] Garrity fulfilled her responsibilities as a guardian ad litem and she had standing to request payment of her expenses.  We conclude the district court did not abuse its discretion by ordering Doug and Cathy to pay half of Garrity’s expenses.

V

[¶33] We conclude the appeal was timely, the court did not err in denying Doug and Cathy’s petition to terminate Greg’s parental rights, and the court did not abuse its discretion by ordering Doug and Cathy to pay half of the guardian ad litem expenses.  We affirm.

[¶34] Gerald W. VandeWalle, C.J.

Daniel J. Crothers

Mary Muehlen Maring

Allan L. Schmalenberger, S.J.

I concur in the result.

Carol Ronning Kapsner

[¶35] The Honorable Allan L. Schmalenberger, S.J., sitting in place of Sandstrom, J., disqualified.

FOOTNOTES
1:    
All names are pseudonyms.