Filed 8/30/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 179

Svetlana M. Seay, Plaintiff and Appellee

v.

Darren John Seay, Defendant and Appellant

No. 20110332

Appeal from the District Court of McIntosh County, South Central Judicial District, the Honorable Sonna M. Anderson, Judge.

AFFIRMED IN PART AND REVERSED IN PART.

Opinion of the Court by Maring, Justice.

Terry W. Elhard, P.O. Box 99, Ashley, N.D. 58413-0099, for plaintiff and appellee.

Donavin L. Grenz, P.O. Box 637, Linton, N.D. 58552-0637, for defendant and appellant.

Seay v. Seay

No. 20110332

Maring, Justice.

[¶1] Darren Seay appeals from a district court judgment granting a divorce to Svetlana Seay and awarding her primary residential responsibility of the parties’ two minor children, A.M.S. and N.A.S.  We affirm in part and reverse in part, concluding: (1) the district court’s finding of fact awarding primary residential responsibility of A.M.S. to Svetlana Seay is not clearly erroneous; (2) the district court did not abuse its discretion when it ordered Darren Seay to maintain a life insurance policy on himself as security for his support obligations; and (3) the district court erred in ordering that Svetlana Seay could move out of state with the children without further order of the court or consent of Darren Seay.

I

[¶2] Svetlana and Darren Seay met in the Ukraine in 2003.  In 2004, Svetlana Seay moved to Wishek, North Dakota with her son from a previous marriage, N.A.S.  Svetlana and Darren Seay married in 2004, and their child A.M.S. was born in 2005.  Darren adopted N.A.S. in 2006.  The family resided in Wishek, where Darren Seay was employed as a pharmacist and Svetlana Seay worked part-time as a hairstylist.

[¶3] The parties separated in 2010, and Svetlana Seay sued for divorce.  After a trial, the district court ordered that Svetlana Seay have primary residential responsibility of both minor children, and Darren Seay receive parenting time with A.M.S.  The court further ordered that Svetlana Seay had permission to move from North Dakota with the children without further consent of Darren Seay or order of the court.  Darren Seay was ordered to pay child support for the children and spousal support to Svetlana Seay, and to purchase and maintain a life insurance policy on himself as security for his future support obligations.

II

[¶4] Darren Seay contends the district court erred in awarding primary residential responsibility of A.M.S. to Svetlana Seay.

[¶5] The district court must award primary residential responsibility to the parent who will better promote the best interests and welfare of the child.  
Morris v. Moller
, 2012 ND 74, ¶ 6, 815 N.W.2d 266; 
Miller v. Mees
, 2011 ND 166, ¶ 11, 802 N.W.2d 153; 
Pember v. Shapiro
, 2011 ND 31, ¶ 12, 794 N.W.2d 435.  In determining the best interests of the child, the court must consider all of the factors enumerated in N.D.C.C. § 14-09-6.2(1).  
Morris
, at ¶ 6; 
Miller
, at ¶ 12; 
Pember
, at ¶ 12.  Those factors include:

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child’s developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent’s home environment, the impact of extended family, the length of time the child has lived in each parent’s home, and the desirability of maintaining continuity in the child’s home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child.  The court also shall give due consideration to other factors that may have affected the child’s preference, including whether the child’s preference was based on undesirable or improper influences.

j. Evidence of domestic violence. . . .

k The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child’s best interests.  The court shall consider that person’s history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

N.D.C.C. § 14-09-06.2(1).

[¶6] We exercise a limited review of an award of primary residential responsibility.  
Duff v. Kearns-Duff
, 2010 ND 247, ¶ 5, 792 N.W.2d 916; 
Fleck v. Fleck
, 2010 ND 24, ¶ 7, 778 N.W.2d 572.  The district court’s award of primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. 
Morris
, 2012 ND 74, ¶ 5, 815 N.W.2d 266; 
Miller
, 2011 ND 166, ¶ 12, 802 N.W.2d 153; 
Pember
, 2011 ND 31, ¶ 11, 794 N.W.2d 435.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, although there is some evidence to support it, on the entire record we are left with a definite and firm conviction a mistake has been made.  
Morris
, at ¶ 5; 
Miller
, at ¶ 12.  When applying the clearly erroneous standard of review, we do not reweigh the evidence nor reassess the credibility of witnesses,  and we will not retry a custody case or substitute our judgment for the ditrict court’s initial custody decision merely because we might have reached a different result.  
Morris
, at ¶ 5; 
Miller
, at ¶ 12.  A choice between two permissible views of the weight of the evidence is not clearly erroneous, and our deferential review is especially applicable for a difficult primary residential responsibility decision involving two fit parents.  
Duff
, at ¶ 5; 
Fleck
, at ¶ 7.

[¶7] The district court expressly considered all of the best interests factors under N.D.C.C. § 14-09-06.2(1) and made detailed findings of fact on each factor.  The court found factors (a), (c), and (k) favored Svetlana Seay; factor (l) favored Darren Seay; factors (b), (d), (e), (f), and (g) were equal; and factors (h), (i), and (j) were not applicable in this case.  Darren Seay has raised only vague and conclusory allegations challenging the district court’s findings on several of the best interests factors.  Darren Seay is asking this Court to reassess the credibility of witnesses, reweigh the evidence, and make new findings of fact.  That is beyond our scope of review of an award of primary residential responsibility.  
See
 
Morris
, 2012 ND 74, ¶ 5, 815 N.W.2d 266; 
Miller
, 2011 ND 166, ¶ 12, 802 N.W.2d 153.  We have thoroughly reviewed the district court’s findings of fact on the best interests factors and we are not left with a definite and firm conviction a mistake has been made.  We therefore conclude the district court’s finding of fact awarding primary residential responsibility to Svetlana Seay is not clearly erroneous.

III

[¶8] Darren Seay contends the district court erred in compelling him to obtain and maintain a life insurance policy as security for his future support obligations.  He argues this provision in the judgment constitutes an improper upward deviation from the amount directed by the child support guidelines:

In this case the trial court did determine the monthly amount of child support which Darren was to pay under the guidelines, but then in addition thereto, proceeded to order him to pay for and maintain a life insurance policy on his life, in an amount no less than his projected future child support and maintenance obligations, naming AMS or an appropriate trust, as the beneficiary . . . . This order in effect orders and compels Darren to pay more toward the support of his child then [sic] he is required to pay under the Guidelines. . . . This part of the Judgment entered by the trial court did not make any statement or finding that a preponderance of the evidence had established that such a deviation from the guidelines is in the best interest of AMS.

[¶9] Section 14-08.1-03, N.D.C.C., expressly provides that the court may make suitable provision for the future care and support of the child, and may require “reasonable security” for child support payments.  This Court has held that the statute authorizes a district court to order a child support obligor to purchase and maintain a life insurance policy as security for court-ordered child support payments in a divorce judgment.  
Thomas v. Stone
, 2006 ND 59, ¶ 8, 711 N.W.2d 199; 
Peters-

Riemers v. Riemers
, 2002 ND 72, ¶ 28, 644 N.W.2d 197.  Similarly, N.D.C.C. § 14-

05-25 authorizes the district court to require “reasonable security” for spousal support payments ordered in a divorce judgment.  Under N.D.C.C. § 14-05-25, the district court may order a spousal support obligor to maintain an insurance policy as security for future support payments in a divorce judgment.  
See
 
Snyder v. Snyder
, 2010 ND 161, ¶ 13, 787 N.W.2d 727; 
Wold v. Wold
, 2008 ND 14, ¶ 19, 744 N.W.2d 541.  The determination whether to order security for a support obligation lies within the sound discretion of the district court, and its decision will be reversed only for an abuse of discretion.  
See
 
Snyder
, at ¶ 13; 
Wold
, at ¶ 19.

[¶10] Darren Seay argues that requiring him to purchase and maintain a life insurance policy as security for his support obligations constitutes an upward deviation from the child support guidelines, and that the district court failed to make a finding that this deviation from the guidelines was in the best interests of the children, as required by 
Heinle v. Heinle
, 2010 ND 5, ¶ 37, 777 N.W.2d 590.  Darren Seay has misconstrued the effect of N.D.C.C. §§ 14-08.1-03 and 14-05-25.  Those statutes do not create an extra level of child support consisting of the cost of providing security for the child support and spousal support payments.  The statutes rather create a separate responsibility, over and above the initial duty to provide proper support to the child in the amount required by the guidelines, to provide reasonable security for future support obligations.

[¶11] We conclude that the judgment provision requiring Darren Seay to obtain and maintain a life insurance policy on himself as security for his future support obligations did not constitute an improper upward deviation from the child support guidelines, and the court did not abuse its discretion when it ordered him to obtain and maintain the policy.
(footnote: 0)

IV

[¶12] Darren Seay contends the district court erred in ordering that Svetlana Seay could move out of state with A.M.S. without Darren Seay’s consent or further order of the court.  The relevant provision in the judgment states:

Residence of the Children:
 Svetlana shall make reasonable attempts to find employment in North Dakota or Minnesota, but has the permission of the Court to move outside of North Dakota with the children without further consent of the defendant or order of the Court, as required by personal and professional needs, but such a move shall trigger changes in the parenting time awarded Darren and may result in modification of child support to accommodate increased costs that Darren may incur to exercise his parenting time with A.M.S.

[¶13] A custodial parent’s ability to move out of state with his or her child is governed by N.D.C.C. § 14-09-07(1), which provides that the parent “may not change the primary residence of the child to another state except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree.”  The court’s primary consideration in a relocation case is whether the move is in the best interests of the child, and the parent seeking permission to relocate has the burden of proving that the move is in the child’s best interests.  
Hruby v. Hruby
, 2009 ND 203, ¶ 9, 776 N.W.2d 530; 
Gilbert v. Gilbert
, 2007 ND 66, ¶ 7, 730 N.W.2d 833.

[¶14] The four-factor 
Stout-Hawkinson
 test is employed in assessing whether a prospective move is in a child’s best interests.  
E.g.
, 
Pember v. Shapiro
, 2011 ND 31, ¶ 23, 794 N.W.2d 435; 
see
 
Hawkinson v. Hawkinson
, 1999 ND 58, 591 N.W.2d 144; 
Stout v. Stout
, 1997 ND 61, 560 N.W.2d 903.  Under the 
Stout-Hawkinson
 test, the court must consider:

1. The prospective advantages of the move in improving the custodial parent’s and child’s quality of life,

2. The integrity of the custodial parent’s motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent, 

3. The integrity of the noncustodial parent’s motives for opposing the move, 

. . . .

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent’s relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

Pember
, at ¶ 23 (quoting 
Dvorak v. Dvorak
, 2006 ND 171, ¶ 13, 719 N.W.2d 362).  No single factor is dominant, and the court must address all four factors in evaluating whether the proposed move is in the child’s best interests.  
Gilbert
, 2007 ND 66, ¶ 8, 730 N.W.2d 833.

[¶15] This Court has outlined the procedure to be followed when the initial determination of custody and a request to move from the state with the children are raised in the same proceeding.  In 
Pember
, 2011 ND 31, ¶¶ 24-28, 794 N.W.2d 435, the Court indicated that in such cases the district court should first consider the initial primary custody determination applying the best interests factors under N.D.C.C. § 14-09-06.2(1), although it may consider the proposed move as part of its assessment of those best interests factors.  
See
 
id.
 at ¶¶ 25-26.  After completing its analysis and determining primary custody, the court may then begin its consideration of the relocation request, applying the 
Stout-Hawkinson
 factors.  
Id.
 at ¶¶ 27-28.

[¶16] Although the district court briefly mentioned in its findings under child custody factor (d) that Svetlana Seay may need to move to another community in order to find full-time work to support herself and the children, there is no indication in the record that the court properly considered all four of the 
Stout-Hawkinson
 factors.  Nowhere in its findings of fact, conclusions of law, order for judgment, or judgment does the court mention the 
Stout-Hawkinson
 factors.  The district court in its findings made only a brief reference to the prospective economic advantage of Svetlana Seay moving to a larger city for employment opportunities, but did not otherwise address the prospective advantages of a move to another state for either her or the child’s quality of life, as required by the first 
Stout-Hawkinson
 factor.  The court wholly failed to make any findings whatsoever on the remaining three 
Stout-

Hawkinson
 factors: integrity of the custodial parent’s motive for relocation, integrity of the non-custodial parent’s opposition, and the potential negative impact on the non-

custodial parent’s relationship with the child.  This Court has explicitly held that the district court “must address all four factors in evaluating whether the move is in the child’s best interests, and failure to address all four factors is reversible error.”  
Gilbert
, 2007 ND 66, ¶ 8, 730 N.W.2d 833.  Most significantly, the court did not make the ultimate required finding that the move was in the child’s best interests.

[¶17] There are additional problems with the district court’s directive that Svetlana Seay was allowed to move from the state with A.M.S.  Darren Seay points out that Svetlana Seay did not in her pleadings or by separate motion request that she be allowed to move from the state with the children.  More significantly, however, the record demonstrates that Svetlana Seay did not intend to immediately move from the state at the time of the judgment.  In fact, she testified that she planned to stay in Wishek for at least one more year until the older child, N.A.S., graduated from high school.  Testimony regarding her desire to move to a larger city arose only in the context of her plan to eventually obtain full-time employment as a hairstylist.  Thus, the district court’s decision to allow her to move from the state was clearly premature, and could have been handled in a subsequent motion when and if Svetlana Seay has definite plans for an immediate move out of state.  By including this provision in the divorce judgment, the court was essentially speculating, based upon unknown and prospective circumstances, without the benefit of knowing the facts at the time when a proposed move actually becomes imminent.  The parties’ circumstances could  change significantly in the year or more that would pass before Svetlana Seay’s potential move from Wishek.  When the custodial parent has indicated that any potential move would not occur for at least one year, the proper procedure is to require the custodial parent to make the appropriate motion when and if the proposed move becomes definite and imminent, and thereby allow the court to consider the 
Stout-Hawkinson
 factors in light of the parties’ actual circumstances at the time of the proposed move.

[¶18] Furthermore, the district court’s order allowing Svetlana to move with the child is open-ended and overbroad.  The relevant provision in the judgment failed to include any geographic restrictions.  Although the court first indicated that Svetlana Seay should attempt to find employment in North Dakota or Minnesota, it then authorized her to move anywhere outside North Dakota “as required by personal and professional needs.”  The court did not define or explain what sort of “personal or professional needs” would justify relocation of the children out of state, and those “needs” are apparently to be determined by Svetlana Seay.  In other words, the district court has essentially delegated the authority to make the determination whether it is in the child’s best interests to move from the state to Svetlana Seay, to be determined solely by her with no limitations, restrictions, or guidelines.  Although this Court has previously upheld an order allowing a parent to move with a child to a specific region without designating a specific city, 
see
 
Pember
, 2011 ND 31, ¶¶ 17-20, 794 N.W.2d 435 (allowing a move to the “New York/New Jersey area”), the Court has never sanctioned an open-ended authorization allowing the parent to move anywhere she desires with the child.  This Court’s prior caselaw requiring consideration of the 
Stout-Hawkinson
 factors when determining whether it is in a child’s best interests to move with a parent out of state clearly suggests a comparison between the child’s current situation and a specific, known alternative.  In this case, the district court in effect made a finding that it was in the child’s best interests to live anywhere but North Dakota.  In doing so, the district court wholly ignored any proper consideration of the 
Stout-Hawkinson
 factors.

[¶19] We conclude the district court erred as a matter of law in ordering that Svetlana Seay could move out of state with the children without Darren Seay’s consent or further order of the court.  If Svetlana Seay wishes to move out of state with the children in the future she may make the appropriate motion to the district court.

V

[¶20] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit.  We reverse that part of the judgment ordering that Svetlana Seay may move out of state with the children without Darren Seay’s consent or further order of the court.  In all other respects, the judgment is affirmed.

[¶21] Mary Muehlen Maring

Daniel J. Crothers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

Sandstrom, Justice, dissenting in part.

[¶22] Because Darren Seay fairly raised the issue of the impropriety of the district court’s ordering him to obtain life insurance, and because the district court improperly ordered him to obtain the insurance, I respectfully dissent.

[¶23] Darren Seay specifically identified as an issue:

Did the trial court commit reversible error in compelling Darren to obtain and maintain life insurance in an amount equivalent to his projected and future child support and maintenance obligations?

[¶24] The majority, at footnote 1, seeks to narrowly characterize the issue raised by Darren Seay:  “Darren Seay argues only that the award of security constitutes an upward deviation from the child support guidelines.”  But in his brief, he raises the larger issue:

When ordering the maintenance of life insurance, the trial court had no information as to whether or not Darren could obtain life insurance, or what it would cost him to obtain and maintain such a life insurance policy.

This issue is virtually identical to the argument in 
Snyder v. Snyder
, 2010 ND 161, ¶ 12, 787 N.W.2d 727, “that no evidence exists indicating the cost or availability of a $250,000 life insurance policy for a 56-year-old man.”

[¶25] In 
Snyder
, this Court said:

We have held that requiring security for a spousal support obligation 
is only appropriate after assessing the relevant circumstances of a case
.  
Gierke [v. Gierke]
, 1998 ND 100, ¶ 51, 578 N.W.2d 522.  Here, the cost of requiring David Snyder to maintain $250,000 of life insurance is unquestionably one of those circumstances.

Snyder
, 2010 ND 161, ¶ 18, 787 N.W.2d 727 (emphasis added).

[¶26] In this case, there was no request for life insurance as security.  There was no assessment of the relevant circumstances of the case.

[¶27] I would reverse and remand that portion of the district court’s judgment requiring David Seay to maintain life insurance as security.

[¶28] Dale V. Sandstrom

FOOTNOTES
0:
ぃボ    
Darren Seay did not cite 
Snyder
, 2010 ND 161, 787 N.W.2d 727, in which a majority of this Court reversed and remanded a divorce judgment which required a spousal support obligor to maintain a life insurance policy as security for future spousal support.  David Snyder argued on appeal he had no notice Anne Snyder was seeking security for spousal support and no opportunity to present evidence about his inability to pay for the cost of life insurance.  
Id.
 at ¶ 14.  This Court held the husband had not received notice or an opportunity to be heard, the procedure violated due process and we remanded for a hearing.  
Id.
 at ¶¶ 16-17.  Darren Seay has not alleged that he did not receive notice or an opportunity to be heard, or that his due process rights were violated.  Darren Seay argues only that the award of security constitutes an upward deviation from the child support guidelines.