2011 ND 166

**Clint MILLER, Plaintiff and Appellee**

v.

**Julie MEES, Defendant and Appellant.**

No. 20110020.

Supreme Court of North Dakota.

Aug. 18, 2011.

Stacy Mae Moldenhauer, Bismarck, N.D., for plaintiff and appellee.

Justin Dale Hager, Bismarck, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Julie Mees appealed from a judgment granting Clint Miller primary residential responsibility of the parties' minor child. Mees argues the court erred in basing its decision on Miller's affidavits, which were not presented in open court, and in awarding Miller primary residential responsibility of the child. We affirm, concluding the court's reference to Miller's affidavits is not reversible error and the court's decision to award Miller primary residential responsibility is not clearly erroneous.

I

[¶ 2] Miller and Mees were never married, but lived together for about two years and had one child together. Mees has another child about one year older than the parties' child. In 2007 the parties separated, and in June 2009, Miller brought this action seeking primary residential responsibility of the parties' minor child. Miller claimed Mees had denied him visitation with the child and sought an interim order for visitation. Mees answered and sought primary residential responsibility of the child. The district court issued an interim order, granting Mees primary residential responsibility of the child and awarding Miller parenting time.

[¶ 3] In September 2009, Mees obtained a temporary domestic violence protection order against Miller, alleging he had sexually abused the child during visitation in September 2009. A police report indicated the allegations were "unfounded," and after further proceedings, the court dismissed the temporary order, concluding there was insufficient evidence to justify a permanent domestic violence protection order. The court reinstated visitation required under the interim order.

[¶ 4] In October 2009, Miller moved to hold Mees in contempt, claiming he had been denied visitation in September 2009, and he submitted an affidavit in support of his motion. The court dismissed Miller's motion, stating the temporary domestic violence protection order preempted the disputed visitation.

[¶ 5]   Barbara Oliger, a court-appointed parenting investigator, filed a parenting investigation report with the district court in June 2010, in which she evaluated the factors for the best interests and welfare of the child under N.D.C.C. § 14–09–06.2 and recommended that Miller receive primary residential responsibility of the child. At a July 2010 trial, Mees was represented by counsel and Miller represented himself. Oliger, Mees, and Miller testified at trial. The court thereafter awarded Miller primary residential responsibility of the child after making findings under the best-interests factors listed in N.D.C.C. § 14–09–06.2. The court's decision stated "Miller did not offer extensive testimony at trial, but his affidavits are in the file and he was available for cross examination on those affidavits."

II

■ [¶ 6]   Relying on N.D.R.Civ.P. 43, Mees argues the district court erred in basing its custody decision on evidence that was not presented in open court. She claims the court committed reversible error in considering Miller's affidavits to make its custody decision.

[¶ 7]   At the time of the July 2010 trial in this action, N.D.R.Civ.P.43(a),[1] provided, in part:

> In every trial, the testimony of witnesses must be taken orally or by non-oral means in open court, unless otherwise provided by statute or these rules. Testimony must be taken orally unless a witness is unable to reasonably communicate orally. All evidence must be ad-

mitted which is admissible under the statutes of this state, the North Dakota Rules of Evidence, or other rules adopted by the North Dakota Supreme Court.

[¶ 8]   Rule 43(a), N.D.R.Civ.P., provides the general rule that witnesses' testimony must be taken in open court and expresses a preference for oral testimony unless otherwise provided by statute or procedural rules. *See Lawrence v. Delkamp*, 2008 ND 111, ¶ 12, 750 N.W.2d 452 (plurality opinion discussing pre–2011 rule); *In Interest of Gust*, 345 N.W.2d 42, 44–45 (N.D. 1984) (decided under pre–1999 rule providing that testimony of witnesses shall be taken orally in open court unless otherwise provided by statute or rules). *See generally* 9A Charles Alan Wright and Arthur J. Miller, *Federal Practice and Procedure: Civil* § 2414 (3rd ed.2008) (discussing similar provisions of parallel federal rule and identifying preference for oral testimony). Our rules allow evidence to be submitted by affidavits for some motions. *See* N.D.R.Civ.P. 43(d) (evidence on motions); N.D.R.Ct. 8.2 (interim orders). However, N.D.R.Civ.P. 43 generally requires oral testimony at trial and does not allow trial by affidavit, and we conclude the district court erred to the extent its decision cited Miller's affidavits and to the extent the court may have relied on those affidavits for the custody decision. Under N.D.R.Civ.P. 61, however, harmless errors and defects that do not affect substantial rights may be disregarded.

[¶ 9]   This record reflects the district court's custody decision relied primarily on

---

**1.**   Rule 43, N.D.R.Civ.P., was amended, effective March 1, 2011, in response to revisions in F.R.Civ.P. 43.   *See* N.D.R.Civ.P. 43, Explanatory Note stating the "language and organization of the rule were changed to make the rule more easily understood and to make style and terminology consistent throughout the rules."   Rule 43(a), N.D.R.Civ.P., now provides, in part, that "[a]t trial, the witnesses' testimony must be taken in open court unless a statute, the Rules of Evidence, these rules, or other court rules provide otherwise."   The explanatory note and language of the amendment do not reflect a substantive change in the rule.

information in Oliger's parenting investigation report. Oliger's report was filed with the district court in June 2010. *See* N.D.C.C. § 14–09–06.3(3) and N.D.R.Ct. 8.6. The best-interests factors for primary residential responsibility considered by the district court under N.D.C.C. § 14–09–06.2 followed the content of Oliger's report. Oliger testified at trial and was available for cross-examination on all facets of her recommendation that Miller be awarded primary residential responsibility of the child. To the extent the court said Miller's affidavits were in the file and he was available for cross-examination and the court may have relied on information in those affidavits, we conclude the information in those affidavits was also included in Oliger's parenting investigation report and any error did not affect Mees's substantial rights and was harmless under N.D.R.Civ.P. 61.

### III

[¶ 10] Mees argues the district court clearly erred in awarding Miller primary residential responsibility of the child under N.D.C.C. § 14–09–06.2. She argues several of the statutory best-interests factors the court found favored Miller should have been found to favor her or neither party and other factors also should have favored her. Miller responds the court did not clearly err in awarding him primary residential responsibility of the child and asserts Mees is essentially asking this Court to reweigh the evidence and substitute its findings for the district court's findings.

[¶ 11] In an initial custody decision, a district court must award primary residential responsibility of a child to the person who will best promote the best interests and welfare of the child under N.D.C.C. § 14–09–06.2. *Wolt v. Wolt*, 2010 ND 26, ¶ 8, 778 N.W.2d 786. Section 14–09–06.2(1), N.D.C.C., outlines the applicable factors for assessing the best interests and welfare of the child and provides:

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether

the child's preference was based on undesirable or improper influences.

j.   Evidence of domestic violence. . . .

k.   The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l.   The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m.   Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

[¶ 12]   " 'The district court has substantial discretion in making a custody determination, but it must consider all of the factors under N.D.C.C. § 14–09–06.2(1)(a)–(m).' " *Wolt,* 2010 ND 26, ¶ 9, 778 N.W.2d 786 (quoting *Brown v. Brown,* 1999 ND 199, ¶ 11, 600 N.W.2d 869). Although a separate finding is not required for each statutory factor, the court's findings must contain sufficient specificity to show the factual basis for the custody decision. *Wolt,* at ¶ 9. An award of primary residential responsibility is a finding of fact that will not be reversed on appeal unless clearly erroneous. *Doll v. Doll,* 2011 ND 24, ¶ 6, 794 N.W.2d 425. Under N.D.R.Civ.P. 52(a), a finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, although there is some evidence to support it, on the entire record, we are left with a definite and firm

conviction a mistake has been made. *Doll,* at ¶ 6. "Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and ' "we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result." ' " *Wolt,* 2010 ND 26, ¶ 7, 778 N.W.2d 786 (quoting *Lindberg v. Lindberg,* 2009 ND 136, ¶ 4, 770 N.W.2d 252).

[¶ 13]   The district court considered all of the factors for determining primary residential responsibility under N.D.C.C. § 14–09–06.2(1)(a)–(m) and made findings under each factor. The district court found factors (a), (b), (e), (f), (g), and (*l* ) favored Miller, factor (d) favored Mees, and factor (c) favored neither parent, while finding the other factors were not applicable. The court recognized the award of primary residential responsibility to Miller was a "very difficult decision" and found:

> The fact that [Mees] believes that [the child] has been abused, but yet has not seen fit to follow recommendations to get [the child] counseling plays heavily in this decision. [The child] needs to be with a parent who will provide her the opportunity to obtain counseling that has been recommended. Although [Mees] says that she will do anything to help her child, her actions do not appear to bear that out.

> Additionally, [Mees's] reluctance to promote visitation with [Miller] is of great concern to the Court. [The child] deserves to have a parent who will recognize the need for and promote interaction with the other parent. The Court believes [Miller] will promote that interaction, while [Mees] will not.

[¶ 14]   Mees argues the district court erred as a matter of law in deciding factors (a), (b), (e), (f), (g), and (*l* ) favored Miller, in finding factor (c) favored neither parent,

and in finding no other factors favored her. She claims this case is "one-sided" and asks this Court to award her custody.

[¶ 15] Mees is essentially asking this Court to reweigh the evidence and make different credibility determinations. However, the court found Mees was not credible in some respects, and we decline her invitation to reweigh the evidence or reassess credibility. The court's award of primary residential responsibility to Miller followed Oliger's parenting investigation report and recommendation. Oliger's report examined all the factors for primary residential responsibility under N.D.C.C. § 14–09–06.2(1)(a)–(m), and she testified at trial and was available for cross-examination on her report. Oliger's report stated that Mees "appear[ed] to have little insight into the daily functioning deficits of the child," and expressed concerns with her lack of follow through with appropriate counseling for the child. Oliger's report also stated that Mees's "bold statements, attitude, and actions throughout these proceedings and prior to these proceedings, raise serious questions about her ability to foster a relation[ ] between the child and [Miller]" and Mees's "behavior is not consistent with her allegations and expressed concern for the child. Her motivation in making these statements has to be in question." Oliger recommended that Miller receive primary residential responsibility of the child. A court has broad discretion in deciding what weight to assign to a parenting investigator's report and recommendation. *See Doll*, 2011 ND 24, ¶ 30, 794 N.W.2d 425. Oliger's report supports the court's award of primary residential responsibility to Miller, and the district court did not err in relying on that report.

[¶ 16] Based upon our review of the evidence presented at trial, we conclude the court's findings regarding primary residential responsibility were not induced by an erroneous view of the law, and we are not left with a definite and firm conviction the court made a mistake. We therefore conclude the court did not clearly err in awarding Miller primary residential responsibility of the child.

IV

[¶ 17] We affirm the judgment.

[¶ 18] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.