2012 ND 225

**Allen HAMMEREN, Plaintiff
and Appellant**

v.

**Kelli HAMMEREN, Defendant
and Appellee.**

No. 20110345.

Supreme Court of North Dakota.

Oct. 23, 2012.

Kevin J. Chapman, Williston, N.D., for plaintiff and appellant.

Jacob D. Marburger, Williston, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Allen Hammeren appeals from a divorce judgment awarding primary residential responsibility and child support to Kelli Hammeren and from an order denying his post-judgment motion to reconsider the effective date of his child support obligation. Because we conclude the trial court did not clearly err in awarding primary residential responsibility and did not abuse its discretion when awarding child support commencing October 1, 2010, we affirm.

I

[¶ 2] Allen Hammeren and Kelli Hammeren were married in 2001 and had one child together, born in 2000. Each party also has a child from a prior relationship. The parties separated in July 2010 and have since lived apart.

[¶ 3] In September 2010, Allen Hammeren commenced this divorce action. The parties stipulated to many of the issues involved in their divorce. However, the parties were unable to agree on a parenting plan for their minor child. Allen Hammeren asserted that a shared parenting plan was in their child's best interests, while Kelli Hammeren contended she should be awarded primary residential responsibility for their child. Allen Hammeren's proposed parenting plan provided the parties would equally share residential responsibility and would alternate having the child every seven days with the exchanges to occur on Wednesday evenings. The plan also provided for an alternating schedule for holidays and other special days.

[¶ 4] In May 2011, a trial was held on the remaining issues relating to residential responsibility and the parenting plan. After trial, the court rejected Allen Hammeren's proposed parenting plan, awarding Kelli Hammeren primary residential responsibility and granting parenting time to Allen Hammeren. The court also ordered Allen Hammeren to pay child support to Kelli Hammeren in the amount of $1,014 per month commencing October 1, 2010.

[¶ 5] After judgment was entered, Allen Hammeren moved to alter or amend the judgment or for partial relief from the judgment as to when his child support obligation would commence, requesting that his child support obligation to commence on June 1, 2011, and that he receive

credit for his previous support payments. The court allowed him a credit of $4,728, toward his child support obligation of $1,014 per month commencing October 1, 2010, but denied his motion in all other respects.

## II

[¶ 6] Allen Hammeren argues the trial court's findings of fact awarding Kelli Hammeren primary residential responsibility and rejecting his proposed parenting plan are clearly erroneous. The trial court must award primary residential responsibility to the parent who will better promote the child's best interests. *Seay v. Seay*, 2012 ND 179, ¶ 5, 820 N.W.2d 705; *Morris v. Moller*, 2012 ND 74, ¶ 6, 815 N.W.2d 266; *Miller v. Mees*, 2011 ND 166, ¶ 11, 802 N.W.2d 153. The court must consider the best interests of the child in awarding primary residential responsibility and all the relevant factors under N.D.C.C. § 14–09–06.2(1). *Morris*, at ¶ 6; *Smith v. Martinez*, 2011 ND 132, ¶ 3, 800 N.W.2d 304. The best-interest factors include:

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

j. Evidence of domestic violence. . . .

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular

parental rights and responsibilities dispute.

N.D.C.C. § 14–09–06.2(1).

▪▪▪ [¶ 7] "Although a separate finding is not required for each statutory factor, the court's findings must contain sufficient specificity to show the factual basis for the custody decision." *Wolt v. Wolt,* 2010 ND 26, ¶ 9, 778 N.W.2d 786. A court's award of primary residential responsibility is a finding of fact, and this Court will not reverse an award unless it is clearly erroneous. *Morris,* 2012 ND 74, ¶ 5, 815 N.W.2d 266; *Miller,* 2011 ND 166, ¶ 12, 802 N.W.2d 153. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Morris,* at ¶ 5; *Doll v. Doll,* 2011 ND 24, ¶ 6, 794 N.W.2d 425.

▪▪▪ [¶ 8] In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have reached a different result. *Morris,* 2012 ND 74, ¶ 5, 815 N.W.2d 266; *Miller,* 2011 ND 166, ¶ 12, 802 N.W.2d 153. A choice between two permissible views of the weight of the evidence is not clearly erroneous. *Duff v. Kearns–Duff,* 2010 ND 247, ¶ 5, 792 N.W.2d 916. "[O]ur deferential review is especially applicable for a difficult primary residential responsibility decision involving two fit parents." *Seay,* 2012 ND 179, ¶ 6, 820 N.W.2d 705; *see also Duff,* at ¶ 5.

[¶ 9] In its memorandum opinion, the trial court considered each of the best interest factors under N.D.C.C. § 14–09–06.2(1) and made findings of fact explaining its decision to award primary residential responsibility to Kelli Hammeren. Although the court found there was either "no difference" or "no significant difference" between the parties in applying most of the factors, the court explained this meant there was either no relevant evidence or the evidence presented created no distinction between the parties. The court stated that "[w]hile this makes it harder for the Court to choose between competing ideas, it is a wonderful treasure for the child to have two such involved and caring parents." The trial court explained its reasons for adopting a parenting plan with primary residential responsibility awarded to Kelli Hammeren, noting the parties proposed parenting plans had quite a few identical items, but there were differences that could not be compromised. The court composed a parenting plan, leaving in place parts on which the parties had agreed and deciding the contested matters. The court made additional findings explaining its decision:

> As noted in the plan, I used the father's proposal of alternating weeks for a summer schedule, and the mother's approach of two long weekends per month for the school year. I feel that both parties are entitled to a reason for this.
>
> I feel that the father's plan would be too disruptive to the child during the school year. Further, the father has not had his current work schedule for that long, and it is inappropriate to use his new work schedule as a long-term plan.
>
> On the other hand, I have seen few divorces that revealed such an involved set of parents, and the father's plan is surely preferred in the summer as opposed to third parties. I would even go so far as to suggest to the mother that as the child ages and things progress, the mother might keep an open mind as to the 50/50 split. The plan can always

be amended by mutual consent of the parties.

[¶ 10]  Allen Hammeren argues the trial court erred in its analysis of best interests factors under factors (d), (e), (f), (h), and (i) of N.D.C.C. § 14–09–06.2(1).  He also suggests the court was motivated by gender bias in its decision and clearly erred in finding the father's parenting plan was "too disruptive."  Specifically, Allen Hammeren argues the court's findings are sparse and conclusory, not supported by testimony or evidence at trial, and are clearly erroneous.  He argues there is no analysis or findings listed under relevant statutory categories, in addition to a lack of findings and conclusions.  He contends there is no evidence in the record that his proposed parenting plan would be too disruptive to the child during the school year and asserts he is being held to a higher standard than the mother to show his ability and time to care for the child.

### A

[¶ 11]  Regarding factors (d) and (e), sufficiency and stability of each parent's home environment and encouraging close and continuing relationship with the other parent, Allen Hammeren disputes the trial court's finding that there is "no difference."  He contends that "overwhelming and undisputed" evidence suggests these factors favor him, that he made great effort to maintain relationships between the child and the extended family, and that there is "credible evidence" Kelli Hammeren alienated the child from grandparents, controlled his contact with the child, and lived with her mother at the time of trial.  He argues factor (f), regarding parents' moral fitness, should favor him based on the court's purported failure to consider evidence of Kelli's moral character.  Allen Hammeren argues factor (h), regarding home, school, and community and the ef-

fect of change, should also favor him because the trial court failed to give "proper weight and finding" and also contends Kelli Hammeren engaged in a unilateral, post-trial move to Williston.

[¶ 12]  The trial court found "no difference" on many factors.  Although we would prefer that the court set forth specific factual findings as an explanation, there is support for these findings based on evidence in the record and the court indicated "no difference" meant there was either no relevant evidence or what evidence there was created no distinction between the parties.  There is specific evidence supporting Kelli Hammeren's arguments regarding the disputed factors.  For example, regarding factors (d) and (e) both parties testified to having a sufficient home for the child and the record shows both parties were willing and had the ability to facilitate and encourage a close and continuing relationship between the other parent and child.  Regarding factor (f), moral fitness, the court heard testimony from both sides regarding her alleged contact with a purported felon and found it did not warrant a finding in favor of Allen Hammeren.  Regarding factor (h), both parties testified to taking an interest in the child's schooling, but neither party testified to the potential effect on the child of any change in the home, school, or community.  Despite Allen Hammeren's assertion of a post-trial move to Williston, Kelli Hammeren responds that a change was not contemplated at the time of trial.  She contends we should not reverse the trial court's determination based on unheard, post-trial events and that Allen Hammeren's proper remedy would be to move for modification of the judgment.

[¶ 13]  Based on our review of the record, we conclude that the trial court's findings of "no difference" on best interest

factors (d), (e), (f), and (h), are supported by evidence in the record, and we give deference to the court's findings and will not reweigh the court's assessment of the witnesses' credibility on appeal. *See Miller*, 2011 ND 166, ¶ 12, 802 N.W.2d 153; *Dronen v. Dronen*, 2009 ND 70, ¶ 10, 764 N.W.2d 675. The trial court's findings on factors (d), (e), (f), and (h) are not clearly erroneous.

## B

[¶ 14] Regarding best-interest factor (i), Allen Hammeren argues the trial court erred when it decided that it was not appropriate to have their ten-year-old child testify regarding the child's preferences.

[¶ 15] Under N.D.C.C. § 14–09–06.2(1)(i), "[i]f the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court *may give* substantial weight to the preference of the mature child[,]" but also "shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences." (Emphasis added.) This Court has explained the trial court generally has "wide discretion regarding the examination of witnesses, and, under appropriate circumstances, a court may refuse to allow a witness to testify." *Reineke v. Reineke*, 2003 ND 167, ¶ 16, 670 N.W.2d 841 (quotations and citation omitted); *see also* N.D.R.Civ.P. 61 ("[N]o error in admitting or excluding evidence or any other error by the court or a party, is ground for granting a new trial, . . . or for vacating, modifying, or otherwise disturbing a judgment or order," and "the court

must disregard all errors and defects that do not affect any party's substantial rights.").[1]

[¶ 16] "While more weight should be given to custodial preferences of a child as the child matures, *Mertz v. Mertz*, 439 N.W.2d 94, 96 n. 2 (N.D.1989), we have held that children who were eight and ten years of age at the time of the divorce could be capable of intelligently choosing between parents for purposes of custody. *DesLauriers v. DesLauriers*, 2002 ND 66, ¶ 13, 642 N.W.2d 892." *Dronen*, 2009 ND 70, ¶ 14, 764 N.W.2d 675. "The preference of a child who is capable of intelligently choosing between his parents for custody can be significant in determining the best interest of the child," but the "child's preference is 'only one factor' to consider and *is not usually determinative.*" *Novak v. Novak*, 441 N.W.2d 656, 658 (N.D.1989) (emphasis added); *see Frueh v. Frueh*, 2009 ND 155, ¶ 14, 771 N.W.2d 593.

[¶ 17] Here, under best-interest factor (i), the trial court found that inquiring into the child's preference was not appropriate:

The father wanted the Court to inquire of the child as to her preference; the mother objected. Because of the child's age and the type of disagreements in this case, I felt it was not appropriate to put the child in the middle. I felt that in this case it would only serve to drive a wedge between the child and one of the parents. I have often interviewed children of varying ages depending on the issues of a case. It *simply was not appropriate in this case.*

[¶ 18] Allen Hammeren argues on appeal that the trial court's finding that it

---

1. Although not at issue in this case, effective March 1, 2012, N.D.R.Ct. 8.13 establishes "a procedure for in chambers interviews in domestic relations cases that balances parental due process rights with a child's right to be heard." *See* N.D.R.Ct. 8.13, Explanatory Note.

was inappropriate for the child to testify is clearly erroneous. He contends nothing in the testimony or record demonstrates the child was not of sufficient age and maturity to testify in chambers or otherwise. He contends he should at least have had the chance to present her as a witness so the court could determine whether the child was of sufficient age or maturity. There was evidence presented, however, that the child was not of sufficient age and maturity.

[¶ 19] Before trial, Kelli Hammeren's attorney filed a written objection and brief opposing the minor child testifying at trial after Allen Hammeren listed the parties' child as a potential witness on his witness and exhibit lists. The objection asserted the child was not of sufficient maturity to make a sound judgment regarding what is in her best interests and also requested the court conduct an in chambers review to determine whether the child was of sufficient maturity if the court allowed the child to testify. However, no response to the objection appears to have been filed, and there is no indication in the record the court made any ruling on the issue before trial.

[¶ 20] At the beginning of the trial, the trial court asked whether the parties had anything to put on the record or procedural issues to resolve before testimony. Nothing was presented regarding whether the child would testify. During the trial, the following exchange took place with Allen Hammeren's attorney:

THE COURT: . . . I planned on breaking for lunch at the end of that, but do you have more testimony? Do you have any other witnesses?

MR. CHAPMAN: Your Honor, we would need to take . . . the child's teacher. . . . My only other potential witness, your Honor—and I wasn't ever planning on calling the child and putting her on

that stand—and I thought I could also save this maybe just for rebuttal, to be honest with you, your Honor—is the child. She is ten and a half years old. And I think at this point, I think I am just going to save that for potential rebuttal, depending upon what Ms. Hammeren has to say here today.

THE COURT: Okay. Well—

MR. CHAPMAN: So, basically we are done until [the child's teacher] is available.

[¶ 21] Allen Hammeren never called the child as a witness in rebuttal. There is testimony in the record the child loved both parents equally, but there is no evidence of the child's actual preferences. Although there was conflicting evidence presented whether the child was mature for a ten-year-old child, there is no indication in the trial transcript that Allen Hammeren either attempted to call the child as a witness at trial, even in rebuttal, or requested the court interview the child in chambers. To the contrary, the trial transcript suggests that Allen Hammeren's counsel had no intention of calling the child as a witness except for purposes of rebuttal, and there is no indication on the record that he attempted to do so or was prevented from doing so.

[¶ 22] We have said that without evidence in the record or a sufficient offer of proof, we are unable to review whether exclusion of the evidence was prejudicial. *See Isaacson v. Isaacson*, 2010 ND 18, ¶ 11, 777 N.W.2d 886; *Thompson v. Olson*, 2006 ND 54, ¶ 7, 711 N.W.2d 226; *Wagner v. Peterson*, 430 N.W.2d 331, 332 (N.D. 1988); *see also* N.D.R.Ev. 103(a)(2). Here, no offer of proof was made as to the testimony of the minor child. Without an offer of proof, we are unable to review whether the purported exclusion of the child from testifying was prejudicial. Fur-

ther, based on the trial court's findings, we believe that even if the child's preference had been considered, it would not have been determinative in the court's denial of Allen Hammeren's request for equally-shared parenting time alternating weekly. Accordingly, we reject Allen Hammeren's argument that the trial court erred under best-interest factor (i). We conclude the court did not abuse its discretion.

C

[¶ 23] In awarding primary residential responsibility to Kelli Hammeren, the trial court found that Allen Hammeren's proposed parenting plan, alternating every seven days with exchanges to occur on Wednesday evenings, would be too disruptive during the school year. We have said that although rotating residential responsibility is not per se erroneous, a court's findings must support the conclusion such alternating custody is in the child's best interests. *See Peek v. Berning*, 2001 ND 34, ¶ 20, 622 N.W.2d 186; *Kasprowicz v. Kasprowicz*, 1998 ND 68, ¶ 15, 575 N.W.2d 921. "We require a factual finding [in adopting a rotating schedule] because it is generally not in the child's best interest to be bandied back and forth between parents in a rotating physical custody arrangement." *Kasprowicz*, at ¶ 15; *see also Peek*, at ¶ 19.

[¶ 24] The evidence in the record about Allen Hammeren's proposal to exchange the child every Wednesday evening during the school year and his work history, the type of work, and the changes in his work schedule, supports the court's finding the parenting plan would be too disruptive. Allen Hammeren testified that since high school he had worked in construction, in the oil fields, and then for 13 years selling cars, but that he had been back working in the oil fields since 2004. He testified that in 2004 he worked for a company dispatch-ing water and oil trucks, three and a half days on, three and a half days off, from 6 a.m. to 7 p.m. or 9 p.m. In around 2008, he began working for another company as a "field man" for about a year and a half, working 14 to 15 hours a day, seven days a week. In July 2010, he began working for another company as a "frac supervisor," essentially working seven days straight with seven days off. As of the time of trial, he had worked for his current employer for about nine months. He testified that with shared custody of the child he would go to working nights. He acknowledged that his schedule could change.

[¶ 25] Allen Hammeren contends the trial court's finding that his work schedule should not be used as a long-term plan because he had not had the schedule for very long shows gender bias. We have said that "[a] father has as much right to raise a child as a mother if he is fit," *Kasprowicz*, 1998 ND 68, ¶ 14, 575 N.W.2d 921, but in this case there is no evidence in the record the trial court was motivated by gender bias in its award of primary residential responsibility. Further, a parent's work schedule is an appropriate consideration in deciding primary residential responsibility. *See, e.g., Klein v. Larson*, 2006 ND 236, ¶¶ 10–11, 724 N.W.2d 565 (considering in child custody proceedings that mother held a variety of jobs with differing work schedules while father had a steady job); *Shaw v. Shaw*, 2002 ND 114, ¶ 9, 646 N.W.2d 693 (considering the family unit's permanence and stability and stating father's desire to further education while working full-time was commendable, but mother had a better chance to be home with their child in the evenings during the school year); *Kjelland v. Kjelland*, 2000 ND 86, ¶ 15, 609 N.W.2d 100 (finding that mother and father shared duties caring for children supported by evidence parties' work schedules was "most determinative"

factor of who was taking care of the children); *Nefzger v. Nefzger,* 1999 ND 119, ¶¶ 7, 18, 595 N.W.2d 583 (considering mother's job provided her with more flexibility for tending to children's medical and school needs while father worked out of town for extended periods); *see also Young v. Young,* 2008 ND 55, ¶ 14, 746 N.W.2d 153 (stating, "[a] change in a parent's work schedule may also be a change of circumstances material to visitation"); *Ludwig v. Burchill,* 514 N.W.2d 674, 675–76 (N.D.1994) (considering father's failure to adjust his work schedule to allow a more stable and consistent relationship with child in deciding change in circumstance warranting change in custody from father); *Ludwig v. Burchill,* 481 N.W.2d 464, 468–69 (N.D.1992) (considering father's flexible work schedule with likely switch to day shift in deciding change of circumstances did not warrant change of custody from father); *Van Dyke v. Van Dyke,* 538 N.W.2d 197, 200–01 (N.D.1995) (considering mother's increased work schedule in change of custody from sole custody in mother to joint custody). Therefore, to the extent Allen Hammeren requests us to reassess the credibility of the witnesses and reweigh the evidence with regard to the trial court's analysis of the best interests factors, we have said "[t]hat is beyond our scope of review of an award of primary residential responsibility." *Seay,* 2012 ND 179, ¶ 7, 820 N.W.2d 705; *see also Morris,* 2012 ND 74, ¶ 5, 815 N.W.2d 266; *Miller,* 2011 ND 166, ¶ 12, 802 N.W.2d 153.

[¶ 26]   Based on our review of the record and the trial court's factual findings, we are not left with a definite and firm conviction a mistake has been made. We conclude the trial court's award of primary residential responsibility to Kelli Hammeren is not clearly erroneous.

### III

[¶ 27]   Allen Hammeren argues the trial court erred in awarding child support effective October 1, 2010, contending the parties had agreed the only issue presented to the court was the selection of a parenting plan.  Kelli Hammeren disputes that the parenting plan was the only issue the parties agreed the court could decide.

[¶ 28]   Initially, we note that in his post-judgment motion to alter or amend the judgment, Allen Hammeren moved the trial court under "Rules 52, 59 and 60 of the North Dakota Rules of Civil Procedure, to alter or amend the Judgment and/or partial relief from the Judgment, as it pertains solely to the Court ordering that child support is effective October 1, 2011 [sic]." Although his motion does not state specifically under which rules' subsections he sought relief, N.D.R.Civ.P. 52(b) allows the trial court, upon timely motion, to amend findings or make additional findings and to amend the judgment accordingly.   Further, this Court has treated motions for reconsideration as either motions to alter or amend a judgment under N.D.R.Civ.P. 59(j), or motions for relief from a judgment or order under N.D.R.Civ.P. 60(b).  *See Vanderscoff v. Vanderscoff,* 2010 ND 202, ¶ 7, 790 N.W.2d 470; *Dvorak v. Dvorak,* 2001 ND 178, ¶ 9, 635 N.W.2d 135.  "A motion under N.D.R.Civ.P. 59(j) to alter or amend a judgment does not usually request a reexamination of issues of fact," but rather "may be used to ask the court to reconsider its judgment and correct errors of law, or, in some circumstances, to present newly discovered evidence." *Roth v. State,* 2006 ND 106, ¶ 18, 713 N.W.2d 513; *see also Hanson v. Hanson,* 2003 ND 20, ¶ 5, 656 N.W.2d 656.

[¶ 29]   We have said that a trial court's decision on a motion to amend or make additional findings under

N.D.R.Civ.P. 52(b), on a motion to alter or amend a judgment under N.D.R.Civ.P. 59(j), or on a motion for relief from the judgment under N.D.R.Civ.P. 60(b), will not be reversed on appeal absent an abuse of discretion. *See Vanderscoff*, 2010 ND 202, ¶ 9, 790 N.W.2d 470; *Christian v. Christian*, 2007 ND 196, ¶ 21, 742 N.W.2d 819; *Korynta v. Korynta*, 2006 ND 17, ¶ 7, 708 N.W.2d 895. In reviewing the trial court's decision, we determine whether it abused its discretion in deciding the moving party did not establish sufficient grounds for disturbing the judgment or order. *Vanderscoff*, at ¶ 9.

[¶ 30] Additionally, the trial court's decision whether to award past child support is discretionary and will not be overturned on appeal absent an abuse of discretion. *See Hagel v. Hagel*, 2006 ND 181, ¶ 7, 721 N.W.2d 1; *Brandner v. Brandner*, 2005 ND 111, ¶ 21, 698 N.W.2d 259; *McDowell v. McDowell*, 2003 ND 174, ¶ 27, 670 N.W.2d 876; *Richter v. Houser*, 1999 ND 147, ¶ 17, 598 N.W.2d 193. In fact, this Court has held a failure to award interim child support may constitute error as a matter of law under some circumstances. *See Hagel*, at ¶ 7; *Ackerman v. Ackerman*, 1999 ND 135, ¶¶ 20–21, 596 N.W.2d 332. The trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Hagel*, at ¶ 9; *Kramer v. Kramer*, 2006 ND 64, ¶ 20, 711 N.W.2d 164.

[¶ 31] In his motion, Allen Hammeren asserted the trial court's decision that his child support obligation would commence October 2010 came as a "complete surprise and shock," because no issue had been presented to the court regarding the parents' support or lack of support of the child before trial. He contends trial was limited to the issue of competing parenting plans and neither party raised any argument, presented any testimony, or produced any evidence regarding allegedly past due child support. Nonetheless, we note the trial court would necessarily need to make an award of support based on its decision rejecting his parenting plan, and after trial Allen Hammeren had submitted a child support worksheet based on his parenting plan for the court's consideration. The post-judgment motion essentially asks the court to reconsider when the child support obligation should commence and requests credit for amounts he had paid to Kelli Hammeren.

[¶ 32] In the divorce judgment, the trial court ordered Allen Hammeren to pay child support of $1,014 per month commencing October 1, 2010. The court concluded that although Allen Hammeren had proposed an equal parenting time model for his child support obligation, Kelli Hammeren's home would be the child's primary residence and the parenting time would not be equal. Although the court did not use the child support calculations Allen Hammeren submitted after trial, the court did use his income figures for the court's calculation of child support.

[¶ 33] In its November 2011 order, the trial court stated that if it had accepted Allen Hammeren's plan of parenting time, it would have substantially reduced his child support obligation. But, as the court explained, "[s]ince nothing was discussed, [the court] assumed that the support obligation would commence with the commencement of the action." In rendering the order, the court considered additional submitted evidence, including check receipts offered to show Allen Hammeren's payment of child support while the divorce was pending. The parties had agreed the issue could be decided by briefs. The

court indicated it was "uncomfortable supplementing the record in this way." However, because Kelli Hammeren had acknowledged receipt of the payments, the court found the payments were made, but said also the reasons for the checks could have been an obligation in addition to child support. The court stated that neither party's briefs had addressed any legal analysis as to when the obligation should commence.

[¶ 34] Relying on *Hagel*, 2006 ND 181, 721 N.W.2d 1, the trial court explained that although there was "good reason to start child support at separation," this was not an ironclad rule, but rather a starting point. The court noted there had been no trial testimony when to start child support and no interim order had set out the parties' obligations during their period of separation. The court found that while Allen Hammeren had paid $300 per month for child support during separation, his actual support obligation was $1,014. The court considered Allen Hammeren's assertions that he had paid other child expenses during this time, but found that Kelli Hammeren had also paid such expenses. The court noted that since they were still married, both parties had legal obligations to pay family expenses. In denying his motion, the trial court found it was fair to give Allen Hammeren a credit toward child support for $2,700 paid prior to trial and $2,028 paid in July and August 2011, but reaffirmed that his child support obligation began October 1, 2010, based on when the divorce action was commenced and his acknowledgment he paid some support before the judgment was entered. The record reflects Kelli Hammeren had custody of the child while the divorce was pending.

[¶ 35] Based on our review, we conclude the trial court did not act in an arbitrary, unreasonable, or unconscionable manner, its decision was the product of a rational mental process leading to a reasoned determination, and it did not misinterpret or misapply the law. We therefore conclude the trial court did not abuse its discretion giving Allen Hammeren credit for the amounts of child support previously paid and in denying his motion in all other respects.

IV

[¶ 36] The judgment and order are affirmed.

[¶ 37] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS and CAROL RONNING KAPSNER, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.